**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS KERN and DEBRA KERN,** | : | **CIVIL ACTION NO. 1:04-CV-2370** |
| **Plaintiffs** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **NATIONAL R.V. INC., and** | : | |
| **GRUMBINE'S R.V. CENTER,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the court is defendants' motion for summary judgment (Doc. 17) on the claims of plaintiffs Thomas and Debra Kern (collectively, the "Kerns") for fraud, fraudulent misrepresentation, and negligence, and alleged violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. ANN. §§ 201-1 to 201-9.3, the Pennsylvania Automotive Industry Trade Practices Act, 37 PA. CODE §§ 301.1–.6, and the Magnuson-Moss Warranty – Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301–2312.  For the reasons that follow, the motion will be granted in part and denied in part.

**I.    Statement of Facts**[1]

In June 2003 the Kerns went to defendant Grumbine's R.V. Center ("Grumbine's") in Harrisburg, Pennsylvania, to purchase a new motor home. (Doc. 1 ¶¶ 2, 5).  The Kerns were shown a vehicle manufactured by defendant National R.V., Inc. ("National"), which was represented by a Grumbine's salesperson to be a "2001 Caribbean Motor Home."  (Doc. 1 ¶¶ 10, 11.)  The Kerns

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiffs, as the non-moving parties.  See infra Part II.

purchased the motor home for approximately $230,000, and took possession of the vehicle on June 23, 2001. (Doc. 1 ¶ 15; Doc. 19, Ex. D at 53-54.)

Problems with the purchase arose shortly thereafter. Although the Grumbine's salesperson and all of the documents signed by the Kerns, including the purchase agreement, represented the vehicle to be a 2001 model, the Kerns discovered that the motor home was in fact a 2000 model. (Doc. 1 ¶¶ 12, 13, 16, 21.) Further, the motor home began experiencing mechanical difficulties. On June 26, 2001—only three days after taking possession of the vehicle—the Kerns returned to Grumbine's for the following repairs: a cracked toilet valve was replaced; a loose cabinet fixture was re-fastened; a kitchen drawer was readjusted; and missing window-awning straps were installed. (Doc. 19, Ex. D at Attach. 2.) Two weeks later the Kerns had a non-operating gas strut replaced and an improperly installed sofa repositioned. (Doc. 19, Ex. D at Attach. 3.)

Unfortunately, the Kerns continued to experience problems with the motor home. On August 25, 2001, Grumbine's made the following repairs: the sofa frame was relocated; the "magnetic pickup" on the ignition was reset to correct generator backfiring; and the television was rewired to correct a problem with reception.[2] (Doc. 19, Ex. D at Attach. 4.) The Kerns were back at Grumbine's three months later for the following additional repairs: the entrance door was adjusted because it was opening while the vehicle was in transit; the steps were adjusted because they were bending; a latch was placed on the bathroom door because it was

---

[2] At some point the television was sent to National for service. Upon its return the Kerns discovered that the sound on the television no longer worked. (Doc. 19, Ex. D at 75-76.)

2

opening when the shower was in use; an outside electrical receptacle was sealed because it was filling with water; a cabinet partition was installed because items placed in the cabinet were falling inside of the wall; the border in the bathroom and "seamtape" in the bedroom were re-glued or replaced because they were peeling from the walls; the fuel filling hose was replaced because it was improperly installed and inhibiting refueling; insulation in the engine compartment was re-fastened because it was falling down; a battery control board was replaced because it was providing inadequate chasis heat; and the "start boost switch" was rewired because it was malfunctioning. (Doc. 19, Ex. D at Attach. 5.)  Despite these repairs, the Kerns were forced to return to Grumbine's in March 2002 to have a malfunctioning fuel gauge and fuel-cap chain replaced, and again in June 2002, to have a crack in the gel coating around the motor examined.[3]  (Doc. 19, Ex. D at Attach. 6.)

The above-captioned action was initially instituted in a Pennsylvania state court in August 2004, and removed to this court in October 2004.  (See Doc. 1.)  The complaint alleges fraud, fraudulent misrepresentation, negligence, and alleged violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. ANN. §§ 201-1 to 201-9.3, the Pennsylvania Automotive Industry Trade Practices Act, 37 PA. CODE §§ 301.1–.6, and the Magnuson-Moss Warranty – Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301-2312 ("Magnuson-Moss").  (Doc. 18 ¶ 3; Doc. 20 ¶ 3.)  It avers that the motor home exhibited, and

---

[3] The record does not reflect whether this was repaired, but only that it was "noted" on the invoice "for warranty purposes."  (Doc. 19, Ex. D at Attach. 6.)

3

continues to exhibit, several problems and malfunctions that were not properly repaired, that the Kerns purchased the motor home based upon defendants' intentional misrepresentations that it was a 2001 model, and that the Kerns would not have purchased the motor home—or would have paid substantially less for it—had they known that it was a 2000 model.  (Doc. 1 ¶¶ 14, 19, 20, 23, 24, 36, 37.)

Both defendants seek summary judgment on the negligence and Magnuson-Moss Warranty claims.  National also seeks summary judgment on the fraud, fraudulent misrepresentation, and Automotive Industry Trade Practices Act claims.  Briefing on the issues concluded in September 2005[4] and the motion is now ripe for disposition.

## II. **Standard of Review**

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury."  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004).  Faced with such a motion, the adverse party

---

[4] Plaintiffs concede that summary judgment should be granted in favor of both defendants on the negligence claim (see Doc. 21 at 2, 6.), and in favor of defendant National on the fraud and Automotive Trade Regulations Act claims (see Doc. 21 at 7.)  Accordingly, summary judgment will be granted in favor of defendants on these claims.  Further, plaintiffs have not presented any evidence or argument in support of their fraudulent misrepresentation claim. (Compare Doc. 18 with Doc. 21).  Abandonment of the position is tantamount to waiver of the claim; hence summary judgment is appropriate on this claim as well. See D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999); L.R. 7.6.  Of course, even absent the waiver plaintiffs' claim of fraudulent misrepresentation against National would not succeed, as there is nothing in the record to indicate that National made *any* representations to plaintiffs.  See Skurnowicz v. Lucci, 798 A.2d 788, 793 (Pa. Super. Ct. 2002) (requiring "a representation" for a fraudulent misrepresentation claim); (see also Doc. 19, Ex. C ¶ 3) (acknowledging that plaintiffs did not have any communications with National prior to the purchase of the motor home).

4

must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim.  FED. R. CIV. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Corneal v. Jackson Township, 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), aff'd, 94 Fed. Appx. 76 (3d Cir. 2004).  "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."  Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).  Only if this burden is met may the cause of action proceed.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see FED. R. CIV. P. 56(c), (e).

### III.   Discussion

The Magnuson–Moss Act, 15 U.S.C. §§ 2301–2312, was enacted to protect consumers and address concerns about manufacturers and others that do not fulfill the obligations of their warranties.  See Harrison v. Nissan Motor Corp., 111 F.3d 343, 351 (3d Cir. 1997).  The Act provides relief for consumers "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the Act], or under a written warranty, implied warranty, or service contract."  15 U.S.C. § 2310(d)(1); see also Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 402 (3d Cir. 2004).  A violation of the act allows the consumer to seek recovery of the purchase price of the product plus attorney's fees and costs.  See 15 U.S.C. § 2310(d); Suber v. Chrysler Corp., 104 F.3d 578, 589 n.12 (3d Cir. 1997).

In the matter *sub judice*, National provided an express limited warranty covering "the structural components, plumbing, air conditioning/heating, and electrical systems fabricated, assembled or installed by National . . . to be free under normal use from manufacturing defects in material or workmanship." (Doc. 21 Ex. A). The warranty applies to "defects in material or workmanship" for a period of one year from the date of purchase, and to structural defects for a period of three years. (Doc. 21, Ex. A.)

The evidence of record indicates that Grumbine's and National addressed the majority of the Kerns' concerns and made numerous repairs to the motor home, free of charge and in compliance with the warranty. However, deposition testimony reflects that the fuel gauge was never adequately fixed, that the batteries still discharge early, that a door continues to open when the vehicle is in use,[5] that the anti-lock braking system does not work, and that the motor home's bolts, nuts, axles and shocks are rusted to a point where the vehicle is unsafe to travel in.[6] (Doc. 19, Ex. D at 87-89, 193-194.) In accordance with the applicable standard of review,[7] a reasonable jury could find that defendants failed to live up to the terms

---

[5] By its terms the warranty limits most entry door "adjustments" to a period of 90 days after purchase. (Doc. 21, Ex. A.)

[6] Defendants correctly point out that the warranty does not cover "batteries" or "[c]hasis components." (see Doc. 21, Ex. A.) However, when viewed in the light most favorable to non-moving plaintiffs, the evidence arguably demonstrates that the discharging batteries may be caused by a faulty circuit board—not faulty batteries. (Doc. 19, Ex. D at 84, 193.) Further, it is unclear whether the purportedly rusty bolts, nuts, axles and shocks constitute "chasis components" entitled to exclusion under the warranty.

[7] See supra note 1.

of their warranty, in violation of the Magnuson-Moss Act.  Accordingly, summary judgment on that claim will be denied.

An appropriate order will issue.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Date:	November 10, 2005

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS KERN and DEBRA KERN,** | : | **CIVIL ACTION NO. 1:04-CV-2370** |
| **Plaintiffs** | : | **(Judge Conner)** |
| v. | : | |
| **NATIONAL R.V. INC., and** | : | |
| **GRUMBINE'S R.V. CENTER,** | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 10th day of November, 2005, upon consideration of defendants' motion for summary judgment (Doc. 17), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for summary judgment (Doc. 17) is GRANTED against plaintiffs and in favor of defendant National R.V. Inc., on the claims of fraud, fraudulent misrepresentation, and violations of the Pennsylvania Automotive Industry Trade Practices Act, and in favor of defendant National R.V. Inc., and Grumbine's R.V. Center on the claim of negligence.

2. The motion for summary judgment (Doc. 17) is otherwise DENIED.

3. The Clerk of Court is directed to DEFER the entry of judgment until the conclusion of this case.

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge